IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CR-00133-GKF |
| | ) | |
| WILLIAM JAMES FORBIS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the court to set forth the basis for its dismissal of the Indictment against defendant William James Forbis during the August 12, 2024 sentencing hearing.

### I.  Background/Procedural History

On April 5, 2023, a grand jury returned an Indictment charging Mr. Forbis with one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [Doc. 2]. Section 922(g)(1) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

Specifically, the Indictment alleges that, prior to March 1, 2023, Mr. Forbis had previously been convicted of the following crimes, each punishable by imprisonment for a term exceeding one year:

1. Unlawful Possession of Methamphetamine, Case No. CF-98-159, in the District Court of Ottawa County, State of Oklahoma, on August 17, 1998;

2. Driving Under the Influence 2nd and Subsequent Offense, Case No. CF-2004-243, in the District Court of Ottawa County, State of Oklahoma, on November 3, 2004; and

3. Possession of a Controlled Dangerous Substance Methamphetamine, Case No. CF-2016-499A, in the District Court of Ottawa County, State of Oklahoma, on March 16, 2018.

[Doc. 2, p. 1]. The Indictment further alleges that, knowing of his prior convictions, Mr. Forbis knowingly possessed in and affecting interstate commerce a Llama, Model IIIA, .380 AUTO caliber pistol, serial number obliterated, and six rounds of federal .380 AUTO caliber ammunition. [*Id.* at pp. 1-2].

On July 18, 2023, Mr. Forbis filed the Motion to Dismiss Indictment, arguing that, pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), § 922(g)(1) was both facially unconstitutional and unconstitutional as applied to him.

In an August 17, 2023 Order, the court concluded that § 922(g)(1) was not facially unconstitutional, but was unconstitutional as applied to Mr. Forbis based on the prior convictions identified in the Indictment.[1] [Doc. 37]. Accordingly, the court granted Mr. Forbis's motion to dismiss and entered a Judgment of Dismissal in favor of Mr. Forbis and against the United States of America. [*Id.* at p. 12; Doc. 38].

On September 18, 2023, the government filed the Opposed Motion to Reconsider Dismissal of Indictment based upon the September 15, 2023 decision of the U.S. Court of Appeals for the Tenth Circuit in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). In *Vincent*, the Tenth Circuit concluded that § 922(g)(1) was facially constitutional and, further, not unconstitutional as applied to *any* convicted felon. *Vincent,* 80 F.4th at 1201-02. Accordingly, *Vincent* rejected both a facial and as-applied constitutional challenge to § 922(g)(1). *Id.*

On November 9, 2023, the court granted the government's motion to reconsider, reasoning that *Vincent* controlled and required reinstatement of the Indictment. [Doc. 44]. The court then

---

[1] The court incorporates its August 17, 2023 Order [Doc. 37] by reference.

set the case for jury trial to begin on January 16, 2024. [Doc. 48].

On December 21, 2023, Mr. Forbis pled guilty to the Indictment. [Doc. 52 to Doc. 55]. Upon disclosure of the Presentence Investigation Report on June 20, 2024, the court scheduled sentencing for August 12, 2024. [Doc. 59].

## II.     Second Amendment Jurisprudence

To better understand the procedural history of this matter, as well as the court's decision to dismiss the Indictment, it is necessary to understand the "still-developing area" of Second Amendment jurisprudence, a field "still in the relatively early innings." *United States v. Rahimi*, 602 U.S. —, 144 S. Ct. 1889, 1923 (2024) (Kavanaugh, J., concurring).

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the U.S. Supreme Court recognized that the Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *see also Heller*, 554 U.S. at 595 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.").[2]  However, the Court also recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and stated that, "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," all of which were "presumptively lawful." *Heller*, 554 U.S. at 626-27, 627 n.26.

In light of the *Heller* decision, in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009),

---

[2] In *McDonald v. City of Chicago,* 561 U.S. 742 (2010), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment, such that the right applies to the States.

the Tenth Circuit considered a constitutional challenge to § 922(g)(1). In a published decision, the Tenth Circuit rejected the constitutional challenge, reasoning, "[t]he Supreme Court . . . explicitly stated in *Heller* that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *McCane,* 573 F.3d at 1047. Thus, *McCane* "foreclose[d]" any argument that § 922(g)(1) violated the Second Amendment. *See United States v. Gieswein*, 887 F.3d 1054, 1064 n.6 (10th Cir. 2018).

Things remained much the same until the Supreme Court issued the *Bruen* decision in 2022. There, the Court began by noting that, "[i]n the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 597 U.S. at 17. However, the Court rejected the two-part means-ends test, reasoning it was "one step too many." *Id.* at 19. Instead, the Court articulated the relevant inquiry, stating:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24. To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," the *Bruen* Court stated that district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 27.

As recognized by Justice Barrett, "[c]ourts . . . struggled with this use of history in the wake of *Bruen*." *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring). For this court's part, the court applied the historical analysis as set forth in *Bruen* and concluded that "§ 922(g)(1) is 'consistent with the Nation's historical tradition of firearm regulation' and the statute" was not facially

unconstitutional. *United States v. Coombes*, 629 F. Supp. 3d 1149, 1160 (N.D. Okla. 2022); *United States v. Mayfield*, 660 F. Supp. 3d 1135 (N.D. Okla. 2023). However, as previously stated, the court permitted an as-applied challenge in this case. *See United States v. Forbis,* 687 F. Supp. 3d 1170, 1176-79 (N.D. Okla. 2023).

But, as recognized by Chief Judge for the Northern District of Oklahoma John F. Heil III, "opinions by well-respected judges reach[ed] conflicting conclusions" and "a circuit split [was] developing on the issue." *United States v. Nakedhead,* No. 23-CR-109-JFH, 2023 WL 5277905, at **2, 2 n.2 (E.D. Okla. Aug. 16, 2023).

In the midst of the historical surveys, on September 15, 2023, the Tenth Circuit Court of Appeals issued the published decision in *Vincent*. Therein, the Circuit considered whether *Bruen* had overruled *McCane*. Recognizing that *Bruen* "created a test" that "didn't exist when [it] decided *McCane*," the Circuit stated "the emergence of a new test doesn't necessarily invalidate . . . earlier precedent." *Vincent,* 80 F.4th at 1200. Rather, the Circuit concluded it was obligated to apply its prior precedent and could not "jettison *McCane*" unless *Bruen* "indisputably and pellucidly abrogated" it. *Id*.

Looking to *McCane*, the Circuit characterized its decision as "rel[ying] solely" on the language in *Heller* describing felon dispossession statutes as "presumptively lawful." *Id.* at 1201. Noting that six of the nine Justices had reaffirmed language in *Heller* that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons" and, further, that the Court had apparently approved of "shall-issue" regimes and background checks, the Circuit concluded that *Bruen* "did not indisputably and pellucidly abrogate our precedential opinion in *McCane*." *Id.* at 1201-02. Thus, *Bruen* did not overrule *McCane* and, in the Tenth Circuit, § 922(g)(1) was not facially unconstitutional. *Id.* at 1202.

Further, the Circuit stated that, "[u]nder *McCane*, we have no basis to draw constitutional distinctions based on the type of felony involved." *Id.* at 1202. Rather, "*McCane* . . . upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm." *Id.; see also In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) ("We have already rejected the notion that *Heller* mandates an individualized inquiry concerning felons pursuant to § 922(g)(1)."). Thus, pursuant to *McCane* and *Vincent*, § 922(g)(1) was not unconstitutional as applied to any convicted felon. *Vincent,* 80 F.4th at 1202

Thereafter, district courts in this Circuit uniformly applied the Tenth Circuit's precedential decision in *Vincent* to reject both facial and as-applied constitutional challenges to § 922(g)(1). *See, e.g., United States v. Gaines*, No. 23-10121-JWB, 2024 WL 2260938 (D. Kan. May 17, 2024); *United States v. Montoya*, No. 21-CR-00997-KWR, 2024 WL 1991494, at *3 (D.N.M. May 6, 2024) (internal citation omitted) ("Despite the Defendant's arguments about how other courts have decided § 922(g)(1), *Vincent* clearly states that § 922(g)(1) remains constitutional after *Bruen*. Even while *Vincent* is being appealed, this Court is obligated to apply the precedent of the Tenth Circuit."); *United States v. Girty*, No. 24-CR-031-JFH, 2024 WL 1677718 (E.D. Okla. Apr. 17, 2024); *United States v. Mumford*, No. CR-24-10-F, 2024 WL 1183673, at *1 (W.D. Okla. Mar. 19, 2024) ("[C]ontrolling Tenth Circuit authority leaves the court no room for consideration of the constitutionality of § 922(g)(1) either on its face or as considered in light of the nature of the predicate felony offense.").[3]

---

[3] The court particularly notes the decision of fellow U.S. District Judge John D. Russell, who explained:

> If this Court had a blank slate on which to write this Opinion, it would, by necessity, follow the *Bruen* analysis and consider whether the mere possession of a handgun and ammunition is protected Second Amendment activity (it is) and whether, in this case, the Government has demonstrated that the restriction set forth in § 922(g)(1)

On June 21, 2024, the U.S. Supreme Court issued its opinion in *Rahimi,* which considered the constitutionality of 18 U.S.C. § 922(g)(8).  There, the Court recognized that "some courts have misunderstood the methodology" of *Heller* and *Bruen*, which "were not meant to suggest a law trapped in amber."  *Rahimi,* 144 S. Ct. at 1897.  The Court articulated the Second Amendment constitutional test to require lower courts to consider "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition."  *Id.* at 1898 (emphasis added).  Specifically, the court must "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'"  *Id.* (quoting *Bruen,* 597 U.S. at 26-31).  Although not purporting to "undertake an exhaustive historical analysis . . .of the full scope of the Second Amendment," the Court concluded, "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment."  *Rahimi,* 144 S. Ct. at 1903.

Less than two weeks later, on July 2, 2024, the U.S. Supreme Court granted certiorari in *Vincent v. Garland*, vacated the judgment, and remanded the matter to the Tenth Circuit for further consideration in light of *Rahimi*.  *Vincent v. Garland,* — S. Ct. —, 2024 WL 3259668 (July 2, 2024).

---

> is consistent with the Nation's historical tradition of firearm regulation (it has not).  But the slate is not blank.  The Tenth Circuit has spoken, and, in doing so, has unequivocally declared that its decision in *McCane* remains good law.  This Court will follow that guidance, which, as the concurrence in *McCane* recognizes, is how it should be – even if the practice leaves open the possibility that the law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases.

*United States v. Gaskey*, — F. Supp. 3d —, 2024 WL 1624846, at *3 (N.D. Okla. Apr. 15, 2024) (internal citations and quotations omitted).

On August 5, 2024, the Tenth Circuit received the Judgment of the U.S. Supreme Court, recalled the mandate issued in *Vincent*, and vacated its prior judgment. *Vincent v. Garland*, No. 21-4121 (10th Cir. Aug. 5, 2024), [Doc. 010111089964]. That same day, the Circuit set a briefing schedule, directing the parties to file supplemental briefs "addressing the impact of *Rahimi* on the issues in this appeal." *Vincent v. Garland*, No. 21-4121 (10th Cir. Aug. 5, 2024), [Doc. 010111089995].

As previously stated, this mater come upon the court for sentencing on August 12, 2024 [Doc. 62], leaving the court to determine how to proceed given that the Supreme Court granted certiorari and vacated *Vincent*, the sole decision on which this court relied to reinstate the Indictment against Mr. Forbis.

### III. Analysis

The Supreme Court has stated that an order granting certiorari, vacating judgment, and remanding (GVR) "is appropriate when 'intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome' of the matter." *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (quoting *Lawrence v. Chater,* 516 U.S. 163, 167 (1996) (per curiam)). Although "[t]he GVR order is not equivalent to reversal on the merits, nor is it 'an invitation to reverse,'" it does require the Circuit (and this court) to determine whether *Rahimi* "compels a different resolution" of *Vincent*. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 845 (6th Cir. 2013).

As discussed above, in *Vincent,* the Circuit characterized *McCane* as having "relied solely on. . . language from *Heller*." *Vincent,* 80 F.4th at 1201. Thus, despite recognizing the two-step

test articulated in *Bruen*, the court did not apply it. Rather, the Circuit focused on whether anything in *Bruen* cast doubt on *Heller*'s language or "the constitutionality of longstanding prohibitions on possession of firearms by convicted felons." *Vincent,* 80 F.4th at 1201.

Having reviewed *Rahimi*, the court concludes that it compels a different resolution of *Vincent*. Specifically, in *Rahimi,* the Supreme Court recognized that "some courts have misunderstood the methodology of [its] recent Second Amendment cases." *Rahimi,* 144 S. Ct. at 1897. In response to such misunderstandings, the Court repeatedly emphasized that its Second Amendment precedent "direct[s] courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right." *Id*. "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances,'" with "why and how the regulation burdens the right" being "central to th[e] inquiry." *Id.* at 1898; *see also id.* at 1910 (Gorsuch, J., concurring) ("Among all the opinions issued in this case, its central messages should not be lost. The Court reinforces the focus on text, history, and tradition, following exactly the path we described in *Bruen*.").

In *Vincent*, the Tenth Circuit did not conduct a historical inquiry. It did not consider the "central" inquiry of "why and how" § 922(g)(1) burdens a convicted felon's Second Amendment right. *Rahimi,* 144 S. Ct. at 1898. Instead, the Circuit relied solely on *Bruen*'s consideration of *Heller*'s language regarding "longstanding prohibitions" that are "presumptively lawful." *Vincent,* 80 F.4th at 1201-02. In doing so, the Tenth Circuit "stretch[ed]" *Heller*'s words "beyond their context." *Rahimi,* 144 S. Ct. at 1910 (Gorsuch, J., concurring). *Rahimi* requires that the court "examine our 'historical tradition of firearm regulation'" to "ascertain whether [§ 922(g)(1)] is 'relevantly similar' to laws that our tradition is understood to permit" and therefore compels a

different result.  *Rahimi,* 144 S. Ct. at 1897-98; *see also United States v. Duarte*, 101 F.4th 657, 668 (9th Cir. 2024), *rehearing en banc granted and vacated by,* 108 F.4th 786 (9th Cir. 2024) ("'Simply repeat[ing] *Heller*'s language' about the 'presumptive[] lawful[ness]' of felon firearm bans will no longer do after *Bruen*.").

Thus, based on the foregoing and in light of the GVR, the court affords *Vincent* little weight.  Further, in this case, the court previously concluded that *Bruen* "constitutes an intervening decision that relieves a district court of its obligation to follow Tenth Circuit authority," *Forbis*, 687 F. Supp. 3d at 1176, and *Rahimi* only reinforces the court's decision in this regard. Accordingly, neither *McCane* nor *Vincent* forecloses a constitutional challenge to § 922(g)(1).

This court previously concluded that § 922(g)(1) was unconstitutional as applied to Mr. Forbis.  [Doc. 37].  In doing so, the court reasoned that the government had not argued that Mr. Forbis's prior convictions were for violent crimes, and had presented no evidence that Mr. Forbis is a danger to the public *if armed*.  *See United States v. Harrison*, 654 F. Supp. 3d 1191, 1210 (W.D. Okla. 2023) (quoting *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336 (3d Cir. 2016) (Hardiman, J., concurring in part and concurring in judgments)) ("'The historical record' demonstrates 'that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed.'").  The government has offered no additional arguments or evidence in this regard.

Further, having reviewed *Rahimi*, nothing in that decision suggests the court should reconsider its prior conclusion.  Rather, in *Rahimi*, the Supreme Court recognized that, "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."  *Rahimi,* 144 S. Ct. at 1899, *see also id.* at 1896

("Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms.") Thus, *Rahimi* is consistent with this court's prior conclusion that the historical record demonstrates that Congress may disarm individuals who have "demonstrated that they would present a danger to the public *if armed*." *Forbis,* 687 F. Supp. 3d at 1178.

Accordingly, for the reasons set forth herein and the court's August 17, 2023 Order, the government has not satisfied its burden to show that a lifetime prohibition against possession of firearms based on Mr. Forbis's prior convictions as set forth in the Indictment is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30. Thus, the Indictment must be dismissed.

## IV.   Conclusion

WHEREFORE, the Indictment as to defendant William James Forbis [Doc. 2] is dismissed. The court shall contemporaneously enter a separate judgment in favor of defendant William James Forbis and against plaintiff United States of America.

IT IS FURTHER ORDERED that the Motion for One-Level Reduction for Acceptance of Responsibility [Doc. 60] of plaintiff United States of America and the Motion for Variance/Non-Guideline Sentence of defendant William James Forbis [Doc. 61] are moot.

IT IS SO ORDERED this 14th day of August, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE